Vasu Vijayraghavan
SBN #310372
1968 S. Coast Highway  #169
Laguna Beach  CA  92651
619-517-4563
vvijay081@gmail.com
Plaintiff in pro per

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| VASUMATHI VIJAYRAGHAVAN, aka Vasu Vijayraghavan, <br><br> Plaintiff <br><br> vs <br><br> COUNTY OF RIVERSIDE; RIVERSIDE SHERIFFS DEPARTMENT; MICHAEL A. HESTRIN, DA, individually; JOSEPH M. HERNANDEZ, DDA, individually; HEATHER D. FERRIS, DDA, individually; KATHERINE COHAN; DEPUTY ORRIS, individually <br> And Does 1 through 100; <br><br> Defendants | No: 5:23-cv-00683-SSS-KKK <br><br> **FIRST AMENDED COMPLAINT FOR VIOLATIONS OF** <br><br> 1) **ARTICLE 1, SECTION 1 OF THE CALIFORNIA CONSTITUTION** <br> 2) **CALIFORNIA CIVIL CODE §43** <br> 3) **42 USC 1983 (SUBSTANTIVE DUE PROCESS)** <br> 4) **VIOLATION OF FOURTH AMENDMENT OF THE US CONSTITUTION** <br> 5) **VIOLATION OF FIFTH AMENDMENT OF THE US CONSTITUTION** <br> 6) **VIOLATION OF SIXTH AMENDMENT OF THE US CONSTITUTION** <br> 7) **VIOLATION OF EIGHTH AMENDMENT OF THE US CONSTITUTION** <br> 8) **VIOLATION OF 14TH AMENDMENT OF THE US CONSTITUTION** <br> 9) **DEFAMATION PER SE UNDER CALIFORNIA CIVIL CODE §44 et seq.** <br> 10) **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** <br> 11) **WRONGFUL ARREST** <br> 12) **WRONGFUL DETENTION** <br> 13) **MALICIOUS PROSECUTION** <br> 14) **GROSS NEGLIGENCE** <br> 15) **FORGERY** <br> 16) **CONSPIRACY TO COMMIT FORGERY** <br> 17) **FRAUD** <br> 18) **CONSPIRACY TO COMMIT FRAUD** <br> 19) **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE** <br> 20) **VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE 6067** <br> 21) **DECLARATORY RELIEF** <br> 22) **CIVIL EXTORTION** |

**JURY TRIAL DEMANDED**

COMES NOW PLAINTIFF VASU VIJAYRAGHAVAN (PLAINTIFF), IN PRO PER, AND STATES THE FOLLOWING

## I.   <u>JURISDICTION AND VENUE</u>

1.   Jurisdiction of this court is appropriate and arises pursuant to 42 USC §1983 and 28 USC § 1367 for supplemental state claims.

2.   Defendants (except for Katherine Cohan) are operating and based in Riverside county.

3.   Venue is proper pursuant to 28 USC §1391.

## II.   <u>PARTIES</u>

4.   Plaintiff Vasu Vijayraghavan is a solo practitioner, licensed to practice in the state of California. Plaintiff has degrees from Harvard University and the University of Michigan, worked at the University of Paris as a professor of finance, wrote for Seeking Alpha, and became licensed to practice law in the state of California in 2016. Before the events discussed in this Complaint, Plaintiff had NO felonies in her record; indeed she had not even a misdeameanor.

5.   At all times relevant to this complaint, Defendant Riverside County District Office is located in Riverside (Riverside County).

6.   At all times relevant to this Complaint, Defendant Riverside Sheriffs Office is located in Perris (Riverside County)

7.   At all times relevant to this Complaint, Defendant Michael A Hestrin, DA is District Attorney of the Riverside District Attorneys Office (Riverside County)

8.  At all times relevant to this Complaint, Defendant Joseph M. Hernandez, DDA is Deputy District Attorney at the Riverside District Attorneys Office. (Riverside County).

9.  At all time relevant to this complaint, Defendant Heather D Ferris is Deputy District Attorney at the Riverside District Attorneys Office (Riverside County)

10. At all times relevant to this Complaint, Defendant Deputy Orris is a deputy at the Riverside Sherrifs Department (Riverside County)

11. At all times relevant to this Complaint, Defendant Katherine Cohan is an attorney, presumptively licensed to practice in the state of California, with an office located at Beverly Hills. (Los Angeles County).

12. Plaintiffs are unaware of the names and true capacities of Defendants, whether individual, corporate and/or partnership, entities named herein as DOES 1 through 10, inclusive, and therefore sue them by their fictitious names. Plaintiffs will seek leave to amend this complaint when their true names and capacities are ascertained.

## III.    FACTUAL ALLEGATIONS

13.   Plaintiff incorporates by reference herein allegations 1 through 12.

14.   Plaintiff had at one point in time a client by the name of Alejandro Odeh-Lara ('Odeh'). Plaintiff originally represented Odeh in 2018 while he was under threat of deportation for a bad check that he had written in 2006.

15. Plaintiff later found out that Odeh is the author of multiple acts of forgery, hacking, identity theft, perjury, and other acts of fraud. In fact, upon information and belief Odeh does nothing but fraudulent acts and this can be proven.

16. Plaintiff, after arguing for Odeh in immigration court, succeeded in obtaining Odeh's cancellation of removal.

17. At the time of the hearing, Odeh discussed with Plaintiff whether she could help him in the context of a dental malpractice case against a certain Dr. Lyngadlen-Fernandez. Odeh also indicated to Plaintiff that he had little money and whether Plaintiff could litigate his

case on a pure contingency basis, with payment of expenses.

18. Against her better judgment, Plaintiff agreed, and commenced litigation, with occasional payment by Odeh to Plaintiff, in September 2018.

19. In fact, Plaintiff remained attorney for Odeh, litigating for two years, with very little contribution by Odeh of expenses. Plaintiff just continued, despite the terrible conditions, since she believed in keeping her word-an old-fashioned concept that could not be understood by individuals like Odeh.

20. However, very quickly, Odeh's fraudulent nature came to the fore. Odeh conceived of a fantastical tale whereby opposing counsel on the Lyngadlen-Fernandez case (ongoing under case number CIVDS 1823772 in San Bernardino superior court) allegedly hacked into Odeh's 'Yelp' account. Opposing counsel's name was Jerry Akita. Like a lot of people, Plaintiff believed Odeh until she found out he had fabricated the whole story.

21. Originally Plaintiff proposed to Odeh a consensual departure from the case. Odeh refused- and then ensued a withdrawal. The hearing took place on July 31, 2020.

22. Prior to that, Odeh threatened a TRO against Plaintiff for the sole reason that she was withdrawing from the case. (The text exchange between Plaintiff and Odeh is Exhibit 1 attached. This was the last text exchange between Plaintiff and Odeh, whether under Whats App, or regular text message).

23. Plaintiff attaches the text exchange in order to show to the court what a screenshot of a genuine text message looks line, compared to the fraudulent text that was believed by Defendant Riverside DAs office, and the basis for the wrongful arrest against her. (Exhibit 3 attached contains the text messages that was used by Odeh/Cohan to convince the DAs office to issue said arrest warrant. The contrast between the two is stark).

24. In the event, Odeh vowed 'punishment' against Plaintiff. Odeh procured another attorney- Defendant Cohan, who proved to be as much of a fraud and a perjurer as Odeh, although maybe not as inventive.

25. Plaintiff had also procured a letter written by Mike Bradbury, DDS, Plaintiff's landlord

and friend, with regards to some X-rays propounded by Lyngadlen-Fernandez, which looked doubtful.

26. Dr. Bradbury never got paid for this letter by Odeh,  for which he charged Odeh $2,500. At some point, Plaintiff paid Dr. Bradbury the sum of $800 for this letter out of her pocket.

27. At the time of the withdrawal of Plaintiff from Odeh's case, Dr. Bradbury also withdrew his letter. Dr. Bradbury no longer trusted Odeh and didn't want to have any part of the case if Plaintiff withdrew. His notice of retraction was duly faxed to the court on or around July 31, 2020. (Bates pages 48-50, Exhibit 5 attached)

28. Plaintiff tried to cooperate with Cohan as much as she could. But from the beginning hard feelings set in. Cohan wanted to file a 473(b) motion regarding some discovery issues in the case. Plaintiff emailed Cohan to state that she would be willing to cooperate, in an attorneys declaration. (Exhibit 8,  email exchanges with Cohan, Bates pages 68-73).

29. On September 14, 2020, Plaintiff learned from Rhonda Bradbury that someone had submitted a fax to San Bernardino superior court, using the Bradburys fax number.

30. Rhonda Bradbury also sent an email to Cohan, when asked about it that Plaintiff did not- and could not-send that fax, which would have been a retraction  of the withdrawal letter of Mike Bradbury originally sent on July 31, 2020. (Exhibit 5  attached, pages 48-58 shows both the original fax and the subsequent fraudulent fax).

31. When comparing the two faxes, it is evident that the headers don't match. Furthermore, the individual submitting the second fraudulent fax submitted a proof of service from the original fax, forging Plaintiff's signature. The individual(s) submitting the fraudulent fax- Odeh/Cohan, didn't even bother doing a proper forgery. They just took the page from the original fax and added it onto the fraudulent fax.

32. Cohan, instead of immediately dissociating from the case representing Odeh turned around and accused Plaintiff of forging her own signature.

33. Furthermore, Cohan sent Plaintiff a screenshot of a fax that was sent on 09/09/2020,

during the weekend of September 11-12, during an interaction relating to Plaintiff's declaration on an upcoming motion to vacate default. (Bates Page 81 on attached Exhibits).

34. Upon information and belief, it was Odeh who submitted the second fraudulent fax of 09/14/2020. The marks of this fraud bear all of the modus operandi of Odeh-a very crude manufacture, with little real work at making the fraud credible to anyone. However, it is clear that Defendant Cohan knew of the prior fraudulent faxes, and tried to 'fob off' these faxes onto Plaintiff.

35. Fraudulent faxes to submit the alleged 'withdrawal of retraction' letter, containing a page containing Plaintiff's forged signature from the July 2020 legitimate fax were added onto these fax attempts, which finally led to a 'success' in the court filing the 'withdrawal of retraction' letter on the courts website on 09/14/2020.

36. However Defendant Cohan apparently knew about the prior fraudulent attempts, since the screenshot was sent to Plaintiff on the weekend **prior** to the filing on the court's website.

37. On the morning of 09/14/2020, Rhonda Bradbury finally apprised Cohan of the forgery. Cohan immediately embarked upon a campaign to vilify Plaintiff and accusing her of forging her own signature and sending the September 2020 'withdrawal of retraction' letter, **when she knew all the time that it was Odeh who had sent the three fraudulent fax attempts.**

38. Upon information and belief, Cohan colluded with Odeh in this fraud. A genuine and honest attorney would have immediately dissociated. Not only did she not dissociate, she lied about subbing out of the case, and turned around and pursued a relentless campaign of harassment and intimidation against not only Plaintiff but also against the Bradburys.

39. Cohan subbed out of the case, only much later in October 2020. In the interim, she continuously bombarded Plaintiff with innuendo that it was SHE who had sent the fraudulent fax, while Cohan knew full well that it was Odeh who had done that.

40. The Bradburys, for their part, incensed at the forgery, intervened in the case. Cohan only

found out about this on or around January 2021, since she avoided service for several months.

41. The complaint in intervention was filed on December 14, 2020, against Cohan and Odeh. (Bates pages 129-144). Defendant Cohan claimed that she had not been served the Bradbury pleading. As a matter of fact, she had been properly served on or around January 14, 2020.

42. Defendant Cohan, instead of filing a responsive pleading initiated a campaign of intimidation, threats, abuse and  coercion against the Bradburys to induce them to dismiss their pleading. (Bates page 82-84).

43. The Bradburys also demanded Cohan several times NOT to contact them by phone or email-only by written correspondence. (Bates pages 86, as well as 93-94).

44. Cohan ignored all of the above entreaties, and continuously bombarded the Bradburys with emails, threats to 'file a malicious prosecution' case against them, **without any legal basis.**

45. In fact, in one email exchange between Cohan and Plaintiff, dated March 14, 2021, the former actually openly states that 'she got a dismissal **in consideration of not filing a malicious prosecution suit against the Bradburys,** a classic example of civil extortion.

46. When the Bradburys were close to defaulting Cohan, she immediately appeared in force, and commenced a barrage of emails and calls to the Bradburys, relentless in her pressure. Cohan never submitted any motion to vacate default on this case.

47. Finally the Bradburys relented to this intimidation by Cohan, under a great deal of duress, withdrew from the case on the same day they would be appearing for a motion to enter default against Cohan.

48. Plaintiff later found out that Defendant Cohan, by a barrage of phone calls made to the Bradburys (Rhonda Bradburys telephone log documenting this is Bates page 127), extorted a 'Non Disclosure Agreement' from the Bradburys, since apparently Cohan was afraid that her criminal activities would be disclosed.(Bates pages 96-101). Having

extracted the forcible dismissal of the pleadings by the Bradburys on a court appearance on 03/10/2023, Cohan didn't even sign the NDA she had concocted.

49. The Bradburys informed Plaintiff that they were called by Cohan on their way to the court, on May 10,2023 with threats and insults. This is an indication of how Defendant Cohan behaves. She does not use legal process or other legitimate means to achieve her end.  On Bates page 118, as well as 120,  Defendant Cohan, in an ungrammatical email threatens the Bradburys with paying the 'sum of $5795 in consideration for not pursuing legal action against them.'

50. In the interim, Plaintiff, learning of this harassment of the Bradburys, sent Cohan one email where Plaintiff alluded to a 'beatdown'. This email is in Exhibit 4, Bates pages 44-46  . The 'beatdown' in question referred to a 'beatdown' in the civil case, not a physical beatdown.

51. Apparently *metaphor* is an idea that is lost both on Cohan and, indeed, the Riverside DA's office, as well as Defendants Hestrin, Cohan, Orris and Hernandez. ('DA Defendants').

52. As well, Cohan, continuing to intimidate and threaten Plaintiff submitted an email to Dale Nowicki, the state bar investigator, claiming that Plaintiff had sent the fraudulent fax of 09/14/2020. What she showed on this email (Bates page 121-126) was none other than the legitimate fax Plaintiff had sent on behalf of the Bradburys on 07/27/2020, which she claimed to be the fraudulent fax sent by Cohan/Odeh on 09/14/2020.

53. In the interim, Odeh had submitted a fraudulent TRO to the Riverside superior court, having been rejected for a TRO in San Bernardino on jurisdictional grounds**.**

54. Plaintiff had never been personally served, either on the original Notice, nor in the order. The report of John Powers, investigator hired by Plaintiff outlines exactly how Odeh forged the Proof of service, and then submitted this to the court to get a default judgment against Plaintiff.

55. The TRO itself is an incoherent rambling of different grievances concocted by Odeh. Yet again, the fraud of the TRO is evident on its face, especially the Proof of Service, if the

DA's office had cared to look at it. Yet again, Odeh did a crude job of fraud, which would never convince any rational and sensible person one minute.

56.  Plaintiff had no knowledge of the second TRO filing-and mailed a couple of the Bradburys court filings against Odeh to Odeh, as a courtesy to the Bradburys. (Bates pages 108-110. Plaintiff apologizes for the faded content-these screenshots were what she eventually got from discovery from the DA's office. They represent envelopes containing the Bradburys pleadings sent to Odeh on or around 01/19/2021.

57.  Odeh filed a complaint to the Riverside DAs office on or around January 2021 on violation of the fraudulent TRO. Deputy Orris believed Odeh hook, line and sinker.

58.  Odeh and Cohan continued to conspire against Plaintiff-and their coup de grace occurred when Odeh/Cohan filed a complaint to the Riverside DAs office on 04/22/2021. (Bates pages 103-105)

59.  This complaint contained a doctored text, allegedly sent by Plaintiff in **October 2020,** at least six months prior. This crude cut and paste job is attached as  Exhibit 3, Bates pages 39-43    attached. The text alleged that Plaintiff would 'slit Odehs throat' and called him a fag. Also Bates pages 231-236 contains other nonsensical texts allegedly written by Plaintiff on the basis of which Deputy Orris wrote up her declaration for arrest.

60.  On the basis of this doctored text alone, where the font changes constantly, names change, times and dates come in and out, Defendants Ferris and Hestrin, along with a warrant declaration by Deputy Orris, signed a warrant for Plaintiffs arrest, under PC 166,**imminent threat of serious bodily harm. Defendants Ferris and Hestrin apparently signed off on an 'imminent' threat, based on a patently doctored text, allegedly issued in October 2020, and submitted to the DAs office by the Complainant six months later.**

61.  It should be noted that never during all of this time was Plaintiff contacted even once, even to see if the text corresponded with the phone records. The text itself is embarrassing in its allegations. No sane person would believe that this text had any semblance to reality,

but apparently the DAs office believed exactly that **having never set eyes on Plaintiff nor even done a random check into her background and what she was about.**

62. Everything used by the DA's office to issue an arrest warrant against Plaintiff was completely fabricated, **and known to be such by Defendant DA's.**

63. In particular, the complaint against Plaintiff, which, with the enhancement contributed by Defendant Cohan could potentially carry a prison term of six to eight years. (Bates pages 60-61).

64. On Bates page 60, the enhancement contributed by Defendant Cohan, and totally fabricated by the DA's office, alluded to an 'event' that allegedly occurred on 01/19/2021, where Defendant DA's claimed that Plaintiff threatened Cohan with bodily harm. **There was no event that was alleged in the complaint, which occurred on 01/19/2021 against Kat Cohan. This event was totally created out of whole cloth by Defendant DA's in order to create crimes against Plaintiff that they could 'run with'.**

65. The only possible event, the 'beatdown' email, which referred to a beatdown in court, by the Bradburys of Kat Cohan, was written in March 2021.

66. Due to the conspiracy of Odeh/Cohan, and subsequently ratified by the DAs office, without a shred of investigation, Plaintiff was issued an arrest warrant for a felony which potentially carried a maximum sentence of six years incarceration. Plaintiff had NO prior felonies, nor even misdemeanors. Plaintiff had one speeding ticket in 2007, and that was it.

67. Indeed, Plaintiff now alleges that, based on the evidence, there was a grand conspiracy to commit fraud and fabricate evidence involving Cohan and Odeh in the first instance, and then ratified by Defendant DA's, who, apparently do everything to fabricate evidence against unwitting individuals, beat them down into a plea bargain, and tout that as a 'success' by the DA's office, in a totally cynical, unethical, illegal and unconstitutional game.

68. Plaintiff was anticipating being a grandmother for the first time. The baby was due on

September of 2021. Therefore she boarded a flight to go to France from LAX, departing July 5, 2021. Imagine her shock that as she was about to board, a swarm of cops in LAX Airport descended upon her, put her in the tightest cuffs possible, **never giving her her Miranda rights.**

69. From there on, for two days, Plaintiff was whirled about in an unknown precinct station, and then subsequent holding cells, where she was always kept in tight cuffs, behind her back, hardly able to breathe.

70. Once she was kept in a 'pokey' so small that it was just a giant coffin. Plaintiff felt that she was being buried alive, and no amount of pleadings with the cops would dissuade them to remove her.

71. Plaintiff was taunted, strip-searched. Her cuffs were not removed even when she had to sign a medical disclaimer form, and she had to be forced to sign this form with a pen held behind her back.

72. Because she clamored for her rights-which were denied to her-Plaintiff was targeted as a 'troublemaker' by the Riverside DA's office/Riverside Sheriffs' office.

73. Once she ended up in Lynwood Womens Penitentiary, a hellhole, devoted to hardened criminals, Plaintiff was kept in a tiny cell, and had to share her cell with a women who was visibly sick and urinating blood. She was surrounded by the screams of inmates, who were demanding water-that was denied to them.

74. In the interim, her family was frantically searching for her. As was Rhonda Bradbury, who the last she had seen of Plaintiff was leaving her curbside at LAX.

75. Plaintiffs telephone had been confiscated and she was denied a telephone call for the two days she was incarcerated. One guard told Plaintiff that this was on the express orders of the Riverside Sheriff's office.

76. In fact, even though she was in the jail at LA, Plaintiff was consistently under the jurisdiction of the Riverside DA/Sheriffs office.

77. Plaintiff asked for an attorney-that was denied to her, again under the orders of the

Riverside Sheriffs office/Riverside DAs office.

78. The last night she was at Lynwood, around 9 pm-in jail, once loses track of time-she was finally released to see the prison therapist. The latter, taking pity on her, allowed Plaintiff to use her telephone so that Plaintiff could at last put in a call to Rhonda Bradbury. It was by happenstance that she got Rhonda Bradbury live, who then immediately organized to bail out Plaintiff.

79. Plaintiff was finally released on 07/07/2021. (Exhibit 7 attached). **Had she not gotten Rhonda Bradbury in that split second phone call-she made the phone call while still in handcuffs-Plaintiff would most probably have been assaulted or worse.**

80. Plaintiff tried time and again to get information of the arraignment. **All this time, Plaintiff was never informed of the charges against her. The jail also played a cat and mouse game with Plaintiff regarding the arraignment date-never informing her of the date-all of this was also under the instructions of the Riverside DA's office.**

81. In the event, after the concerted effort of Rhonda Bradbury, Plaintiff was finally 'spit out' of jail on 07/07/2021. As she got out of the jail, she collapsed twice on the sidewalk in Compton. Rhonda Bradbury will willingly testify to the state Plaintiff was in at that time, after two days of being denied water, food, and even air.

82. Plaintiff was tortured, humiliated, physically assaulted-by the handcuffs constantly in place-even when she was seated. All of this occurred under the express instructions of the Riverside DAs office, as well as the Riverside Sheriffs Office.

83. For two days, Plaintiff was caught in a mire of urine, blood, vomit and totally unsanitary conditions, with her arms tightly cuffed behind her back. The 'toilet' was an urinal in the cell, never cleaned out, and filled with waste matter flowing over. This was all under the direct instructions of Defendant Riverside DA. It was a miracle Plaintiff did not contract a disease.

84. In the event, Plaintiff found an attorney. She was arraigned on these baseless charges on July 28, 2021 and thereby missed the birth of her first grandson.

85. Plaintiff self-reported her felony to the state bar, and on or around August 2021 all the way to November 2022, the 'felony alert' was kept on Plaintiff's state bar website, repelling potential clients.

86. Plaintiff was constantly humiliated by this felony alert, and the state Bar itself started disciplinary proceedings against her. She is currently fighting these proceedings, which was incepted by the malicious prosecution by the Riverside DAs office.

87. On or around September 2021, the DA's office, and Hernandez in particular was shown Plaintiffs phone records, which showed that **no text was sent by her to Odeh.**

88. Furthermore, a licensed and seasoned investigator was engaged to look into Odeh's background. The damning report, Bates pages 6-37, shows that the Proof of service for the TRO was forged-and a bad forgery at that. The thorough report of John Powers also shows that Odeh has been consistently involved in Social security fraud, forgery, perjury, hacking, identity theft, bad check writing, and on and on.

89. Nevertheless, despite all this evidence, Defendants Hestrin and Hernandez persisted in trying to 'find evidence' against Plaintiff.

90. The 'investigation' for what it was worth persisted for almost a year and a half. Defendant Hernandez was apprised about the 'felony alert' and the damage it could cause. He totally ignored this and instead believed every single lie propounded by Defendant Cohan and Odeh-and there were multiple of these.

91. Finally Odeh was brought in for questioning in August 2022. The embarrassing interview demonstrated a man doing cartwheels on the alleged text where Plaintiff was supposed to have threatened to 'slit his throat'. First Odeh claimed the text message was in from a regular provider, then from Whats App, and then Viber.

92. Defendants swallowed everything Odeh said without any doubt. Furthermore, Odeh first claimed that the Laguna Beach address-which is actually a PO Box on a busy main highway of Laguna Beach was actually an 'avocado farm' and that a certain Joey Diaz had personally served Plaintiff at a PO Box. That Joey Diaz posted an address that didn't

exist. (Bates pages 239-375). In this extraordinary interview, Odeh is caught in lie after embarrassing lie. He creates fabulous stories, and yet, even then Defendant Hernandez believed every word this confidence artist said.

93. Throughout the one year and a half of terror lived by Plaintiff and her family, **she was never once brought in for questioning. The reason is that DA Defendants knew that if this happened, their fantastic story that Plaintiff had written a text threatening to 'slit Odeh's throat' would be upended and the DA's amazing case would shrivel into nothing.**

94. All of Odeh's extraordinary allegations were believed completely by Defendant Hernandez, Defendant Hestrin-indeed the whole DAs office was hell-bent in creating whatever evidence they could against Plaintiff in order to try and squeak through a preliminary hearing and forcibly beat down Plaintiff into some kind of plea bargain.

95. The Riverside DAs office, and DA Hestrin in particular, is notorious for this kind of extortionary behavior-creating frivolous cases, then complaining about a backlog they themselves created, interminable 'investigations' and then exhausting the individuals charged of their financial, emotional and personal resources into some kind of ignominious plea bargain, and then crowing victory.

96. Plaintiff had the extraordinary fortune of having family and friends who resolutely backed her-to this day. Plaintiff also made it be known quickly that she would not back down, and would fight these baseless and fabricated charges.

97. Finally, with their backs to the wall, and two days before Plaintiff's charges would have expired by law, Defendant DA finally moved for dismissal in a hearing that Plaintiff was deliberately kept out of, since it would show up Defendant DA in its most humiliating situation.

98. The dismissal occurred under PC 1385-under the interests of justice, on October 3, 2022.

99. For one and a half agonizing years, Plaintiff had to suffer humiliating continuance after continuance so that Defendant DA's could more precisely 'find evidence' to be able to

convict Plaintiff of the crime that they had themselves concocted. (Bates pages 376-380). Defendant DA's would leave no stone unturned to wring from the charges they had concocted against Plaintiff SOME evidence, doesn't matter from where, to elicit, at a minimum a plea bargain from Plaintiff.

100.    In the interim, NO preliminary hearing was held while the DA frantically tried to 'find evidence' against Plaintiff in the best Stalinian tradition. 'Give me the man and Ill find the crime', stated Beria, Stalin's henchman.

101.    The DAs office was operating in exactly the same tradition.

102.    All the while,  the DAs office had no compunction dragging Plaintiffs good name in the mud, incarcerating her on trumped up charges, in the harshest prison known to man, for a few pages of patently doctored texts, concocted by known confidence artists-Odeh and Cohan. Odeh  was a rank  amateur in the confidence artist game, but amateur or not was able to convince the Riverside DAs office, whose 'investigative' powers would be trumped any day by any teenager, who would quickly have seen through the Odeh/Cohan charade.

103.    It took the DAs office a year and a half of 'investigating' the fraud of this rank amateur in the fraud game-and even at the end, they still believed Odeh/Cohan.

104.    In the interim, it was Plaintiff who paid the price of ignominious mix of incompetence, gullibility, self-serving  and finally unconstitutional and illegal behavior by the Riverside DAs office and the individuals therein working.

105.    To this day, Plaintiff is still reeling from this toxic mix doled out to her by Defendants all combined, through no fault of her own, professionally, personally and humanly.

106.    Plaintiff has not brought in Odeh himself into this lawsuit, because still under the fraudulent TRO, which, fraudulent or not, represents an order from the court.


**COUNT 1**

**VIOLATION OF ARTICLE 1, SECTION 1 OF THE CALIFORNIA CONSTITUTION**

(As to all Defendants except Katherine Cohan)

107.    Plaintiff incorporates by reference herein allegations 1 through 88.

108.    Article 1, section 1 of the California Constitution states:

All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

109.    Plaintiff alleges that above-mentioned Defendants violated the First Article of the First Section of the California constitution by depriving her of her rights to liberty **without any due process whatsoever.**

110.    The DAs office cannot invoke the famous cases of *Imbler v. Pachtman*, 424 U.S. 409, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976) and *Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993) to invoke absolute prosecutorial immunity, since, as the court mentioned in *Wearry v Foster,* (2022), 33 F 4th 260, the DAs office was ALWAYS operating throughout *investigatory* functions versus *advocacy* ones. Only the latter merit absolute immunity.

## COUNT 2

**Violation of California Civil Code 43**

**(As to all Defendants except Katherine Cohan)**

111.    Plaintiff incorporates by reference herein allegations 1 through 110.

112.    Under the above-mentioned California Code, it is stated

113.    "Besides the personal rights mentioned or recognized in the Government Code, every person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to his personal relations.

114.    Plaintiff maintains that this was violated multiple times by Defendants in her wrongful incarceration, wrongful arrest **without any notice or investigation. In short, Plaintiff was caught in the web of deceit spun by Odeh and Cohan, with no recourse. And this was the fault of the DA's office.**

115.    Furthermore, Defendant DA and the DAs infringed on Plaintiffs privacy-and still does so to this very day-by requiring that she divulge her private phone records, when a review of Complainants phone records would have shown the falseness of the allegations. Defendants never did this.

## **COUNT 3**

### **Violation of 42 USC 1983**

### **(As to all Defendants except Katherine Cohan)**

116.    Plaintiff incorporate by reference herein allegations 1 through 115.

117.    42 USC §1983 states in relevant part,

"Every person who under color of any statute, ordinance, regulation custom or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

118.    Plaintiff alleges that operating 'under color of law', Defendants abused their power to deprive Plaintiff of her rights to due process, to be informed of her rights, to have an attorney.

119.    Plaintiff also deserved a speedy resolution to the matter, when Defendants knew full

well that there was no case against Plaintiff. There was no reason to arrest Plaintiff without investigation-which investigation would have showed the baselessness of the charges. But once arrested, Plaintiff deserved a speedy investigation, and to have her evidence taken into account. Such did not happen.

## COUNT 4

### Violation of the Fourth Amendment of the US Constitution

### (As to all Defendants except Defendant Cohan)

120.   Plaintiff incorporates by reference herein allegations 1 through 119.

121.   The Fourth Amendment to the US Constitution provides against unlawful searches ans seizures without a warrant or probable cause.

122.   In the present case, Defendants cannot claim personal immunity, since Defendants never made *prosecutorial* decisions.  *Kentucky v. Graham* (1985) 473 U.S. 159, 165 [105 S. Ct. Furthermore Defendants are not entitled to *qualified* immunity since that is only available for such acts such as  giving legal advice to police, or conducting investigations regarding an individual before there is probable cause to have that individual arrested. ( *Imbler v. Pachtman, supra*, 424 U.S. at p. 430 [96 S. Ct. at pp. 994-995] *Buckley v. Fitzsimmons*,  509 U.S. at pp. 272-275 [113 S. Ct. at pp. 2615-2617].)

123.   In the present case, for the reasons outlined above, there was no probable cause investigation at all.

124.   Furthermore, the Supreme Court in *Manuel v. City of Joliet, Ill.,* 137 S. Ct. 911, 915 (2017)
allowed a  Fourth Amendment claim when there was no probable cause, as here.

## Count 5

### Violation of the 5th Amendment of the US Constitution

### (As to all Defendants except Katherine Cohan)

125.   Plaintiff incorporates by reference herein allegations 1 through 124.

126.   Plaintiff's Fifth Amendment rights were violated since she was never given her

*Miranda* rights which she was due as soon as she was detained at LAX.

## Count 6

### Violation of 6th Amendment rights

### (As to all Defendants except Katherine Cohan)

127.    Plaintiff incorporates by reference herein allegations 1 through 126.

128.    Plaintiff, although detained, was never provided an attorney, even though she requested it time and again.

129.    She discovered that this was due to the express direction of above-mentioned Defendants.

## Count 7

### Violation of the Eight Amendment to the US Constitution

### (As to all Defendants except Katherine Cohan)

130.    Plaintiff incorporates by reference herein allegations 1 through 129.

131.    Plaintiff was denied the right to a speedy trial, due to the interminable 'investigations of Defendants', initiated without probable cause, In a frenzied desire to 'find evidence' where the evidence did not exist.

132.    Under those circumstances, Defendant should never have been arrested, and once arrested, should have benefited from a speedy dismissal.

133.    Furthermore, the bail imposed, at $50,000 was excessive and cruel for a couple of doctored texts. Defendants also dragged their feet in providing bail to Plaintiff.

## Count 8

### Violation of the Fourteenth Amendment

### (As to all Defendants except Katherine Cohan)

134.    Plaintiff incorporates by reference herein allegations 1 through 133.

135.    Plaintiff alleges that Defendants violated Plaintiff's rights to procedural due process, by never even investigating the charges by Odeh, and issuing an arrest warrant without giving Plaintiff a right to be heard.

**Count 9**

**Defamation per se**

**(As to all Defendants)**

136.    Plaintiff incorporates by reference herein allegations 1 through 136.

137.    Defamation per se is a defamatory allegation, published to third parties, which impugns Plaintiff in her profession.

138.    Plaintiff alleges that by Defendants malicious acts, she was forced to suffer a 'felony alert' on her state bar Profile for almost two years.

139.    Defendants the DAs office knew this, and Defendant Cohan, although she may or may not have known, committed acts which were the 'but for' cause of this felony alert.

140.    Defendant Cohan also defamed Plaintiff by claiming that it was she who sent the fraudulent fax, undermining Plaintiff's professional reputation in the court.

**Count 10**

**Intentional infliction of emotional distress**

**(As to all Defendants)**

141.    Plaintiff incorporates by reference herein allegations 1 through 140.

142.    Intentional infliction of emotional distress (IIED) is a tort that occurs when one acts in a manner that intentionally or recklessly causes another to suffer severe emotional distress, such as issuing the threat of future harm.

143.    In the present case, Defendant Cohan knowingly complained to the DAs office a complaint that she knew to be false.

144.    Subsequently, Defendant DA and Sheriffs office cause Plaintiff to be arrested in a baseless, uninvestigated charge which they knew would cause Plaintiff's detention. Defendant DA and Sheriff acted recklessly and intentionally to cause severe distress to Plaintiff, including Being absent at the birth of her first grandson, which was entirely foreseeable.

**Count 11**

**Wrongful arrest**

**(As to all Defendants )**

145.    Plaintiff incorporates by reference herein allegations 1 through 144.

146.    Defendants caused Plaintiff to be wrongfully arrested with no probable cause.

147.    As to Defendant Cohan, she should have known that by making baseless and false complaints, she would cause Plaintiff to be arrested.

## Count 12

**Wrongful detention**

**(As to all Defendants except Katherine Cohan)**

148.    Plaintiff incorporates by reference herein allegations 1 through 147.

149.    Defendants collectively, including Cohan, caused Plaintiff to be wrongfully detained.

150.    Defendant Cohan either knew or should have known that wrongful detention would result as a result of her malicious actions.

## Count 13

**Malicious prosecution**

**(As to all Defendants except Katherine Cohan)**

151.    Plaintiff incorporates by reference herein allegations 1 through 150.

152.    The Supreme Court in *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 915 (2017) allowed a malicious prosecution claim when the evidence was fabricated as in the present case.

153.    Malicious prosecution is when a case was terminated in favor of Plaintiff, with no Probable cause and done with malice.

154.    Plaintiff alleges that all of these elements are met in the present case as to Defendants DA, Sheriffs office, and the individual DAs, who all conspired to initiate and pursue a malicious prosecution against Plaintiff.

155.    Furthermore Defendants DA and Sheriffs office, as well as the individual DAs and sheriff knew pertinently that the evidence against her was fabricated but still continued

their investigation for a year and a half, ultimately leading in Plaintiff's exoneration, since there was no evidence.

## Count 14

### Gross negligence

### (As to all Defendants)

156.    Plaintiff incorporates by reference herein allegations 1 through 156.

157.    Plaintiff alleges that all Defendants acted in a grossly negligent manner. Defendants owed Plaintiff at least the minimum duty of care not to make malicious, non-founded allegations against her, and they breached that standard of care recklessly and sometimes maliciously.

## Count 15

### Forgery

### (As to Defendant Cohan)

158.    Plaintiff incorporates by reference herein allegations 1 through 157.

159.    Plaintiff alleges that Defendant Cohan forged Plaintiff's signature on the fraudulent fax of September 14, 2020, and instead blamed Plaintiff for her own acts of forgery.

## Count 16

### Conspiracy to commit forgery

### (As to Defendant Cohan)

160.    Plaintiff incorporates by reference herein allegations 1 through 159.

161.    Plaintiff alleges that either Cohan forged Plaintiffs signature or she conspired with Odeh to do so.

## Count 17

### Fraud

### (As to all Defendants)

162.    Plaintiff incorporates by reference herein allegations 1 through 161.

163.    Plaintiff alleges that, by issuing the fraudulent fax, committed a fraudulent act, which, in her guilt, she attributed to Plaintiff knowing full well that that could not be the case.

164.    As to DA Defendants, as well as Deputy Orris and the Riverside Sheriffs Department, they fraudulently created an arrest warrant without any evidence whatsoever in order to force Plaintiff into a plea bargain situation using all the police and prosecuting force available to them.

## Count 18

### Conspiracy to commit fraud

### (As to all Defendants)

165.    Plaintiff incorporates by reference herein allegations 1 through 164.

166.    Defendant Cohan conspired to send out the fraudulent fax with Odeh and then tried to cover her tracks by accusing Plaintiff of the very acts that she herself did.

167.    Plaintiff also believes that after issuing the arrest warrant out of totally fabricated evidence, DA Defendants as well as Deputy Orris and the Riverside Sheriffs Department conspired with Odeh and Cohan to keep the investigation going as long as they could, in order to force Plaintiff into some terrible plea bargain that they were hoping she would take.

## Count 19

### Intentional interference with prospective economic advantage

### (As to all Defendants)

168.    Plaintiff incorporates by reference herein allegations 1 through 167.

169.    Plaintiff is under the threat of suspension from her license due to the acts of Defendants collectively, through no fault of her own.

170.    Interference with prospective economic advantage is when a party intentionally Interferes with the economic and professional interests of a third party by anticipation.

171.    Here Defendant Cohan should have known that by making false allegations to the DA, that she would interfere with the practice of law by Plaintiff.

172.    Similarly, Defendant DA and the individual DAs should have known that by making baseless claims against a licensed attorney, that this would ruin that attorneys practice.

173.    This interference was done intentionally, and even after Defendant Hernandez knew about the 'felony alert' on Plaintiffs state bar profile.

174.    As well, the felony on Plaintiff's record is causing a detriment to her credit score, and her public records.

### Count 20

**Violation of California Business and Professions Code 6067**

**(As to Defendants Hestrin, Hernandez, Ferris and Cohan)**

175.    Plaintiff incorporates by reference herein allegations 1 through 174.

176.    California Business and Professions Code 6067 states in relevant part

Every person on his admission shall take an oath to support the Constitution of the United States and the Constitution of the State of California, and faithfully to discharge the duties of any attorney at law to the best of his knowledge and ability.

177.    The above-named Defendants are licensed attorneys in the state of California, and by committing the above-mentioned acts have violated their oath.

### Count 21

**Declaratory relief**

**(As to Defendants except Katherine Cohan)**

178.    Plaintiff incorporates by reference herein allegations 1 through 177.

179.    Plaintiff respectfully requests the court to expunge the felony currently on her public records to no fault of her own.

### Count 22

**Civil extortion**

**(As to Defendant Cohan)**

180.    Plaintiff incorporates by reference herein allegations 1 through 179.

181.    The tort of civil extortion consists of a) a wrongful threat known to be such by Defendant, b) to extort money, services or other desired outcomes by Defendant and c) the Plaintiff complies.

182.    In the present case, Defendant Cohan extorted a dismissal by the Bradburys under threat, duress, 'unleashing bulldog attorneys against them' and created fear by the Bradburys, ultimately leading to their dismissal of their case **the very day they could have defaulted Cohan.**

183.    Defendant Cohan exerted this pressure on the Bradburys unrelentingly, even calling them on Easter 2021, in order to achieve the desired end, instead of using legal process.

### PRAYER FOR RELIEF

**Wherefore, Plaintiff requests the court for**

a) **Compensatory  damages, at a minimum of $1,500,000 from Defendants DA and Sheriff, as well as the individual DA and Sheriff for the harms Plaintiff suffered egregiously due to the false arrest and detention.**

b) **Compensatory damages of $200,000 at a minimum from Defendant Cohan due to her fraud and her forgery of Plaintiff's signature.**

c) **To award Plaintiff appropriate costs and reasonable attorney's fees incurred under this lawsuit.**

d) **To grant her presumed damages due to the defamation per se by Defendant, at a minimum of $500,000**

e) **To provide punitive damages to Plaintiff consistent with Defendant's malicious acts**

f) **Provide declaratory relief to Plaintiff as requested above.**

g) **Provide any other such relief as the court may deem just and proper.**

**DEMAND FOR JURY TRIAL**

Respectfully submitted

    Dated:06/03/2023

*Vasu Vijayraghavan*
_____

        Vasu Vijayraghavan

        In pro per

**<u>Certificate of Service</u>**

I hereby certify that on 06/03/2023, I electronically filed the above First Amended Complaint with the Clerk of Court using the CM/ECF system

I also certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system

*Vasu Vijayraghavan*

Vasu Vijayraghavan

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

V VIJAYRAGHAVAN FIRST AMENDED PLEADING